UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN LASHER,

                                        Plaintiff,

                                                            Case # 24-CV-6065-FPG

v.

                                                            DECISION AND ORDER

AMBER CONROY, *et al*.,

                                        Defendants.

## INTRODUCTION

Plaintiff Brian Lasher brings this action against Defendants Amber Conroy, the City of Niagara Falls ("the City"), Detective Alexandra Mayes, Niagara County ("the County"), District Attorney Brian D. Seaman, Assistant District Attorney Peter Wydysh, and John Does 1-5. ECF Nos. 1, 29.[1] In his amended complaint, Plaintiff alleges malicious prosecution, false arrest, and false imprisonment in violation of 42 U.S.C. § 1983 as well as malicious prosecution, defamation, and defamation *per se* under state law. ECF No. 29. The City and Detective Alexandra Mayes move to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 30. The County, District Attorney Brian D. Seaman, and Assistant District Attorney Peter Wydysh move separately to dismiss under Rule 12(b)(6). ECF No. 31. Plaintiff opposes both motions. ECF No. 33. Plaintiff has also filed cross-motions for default judgment against Conroy and for discovery. ECF No. 33. For the reasons that follow, the motion to dismiss on behalf of the City and Mayes (ECF No. 30) is GRANTED IN PART AND DENIED IN PART. The motion to dismiss on behalf of the County,

---

[1] The City of Niagara Falls Police Department and Niagara County District Attorney's Office were initially Defendants in this action. *See* ECF No. 1. In the Court's February 11, 2025 Decision and Order, the Police Department and District Attorney's Office were dismissed with prejudice. ECF No. 26. However, in the amended complaint, they are still listed as Defendants. *See* ECF No. 29. While it is unclear to what extent Plaintiff is asserting claims against the Police Department or District Attorney's Office in the amended complaint, the Court wishes to clarify that because those Defendants have already been dismissed with prejudice and terminated as Defendants, it will not address any arguments as to the Police Department or District Attorney's Office.

Seaman, and Wydysh (ECF No. 31) is GRANTED. And Plaintiff's cross-motions for default judgment and discovery (ECF No. 33) are DENIED.

## BACKGROUND

The facts in this section are taken from Plaintiff's amended complaint. ECF No. 29. According to Plaintiff, the incidents that gave rise to this action began on February 7, 2021, when Plaintiff was attending a Super Bowl party at Seneca Niagara Resort and Casino hosted by John Scholl. ECF No. 29 ¶ 15. In the early hours of the next morning, Plaintiff left the party to go to his hotel room, but Scholl asked him to return to the party. *Id.* ¶ 17. Plaintiff went back to the party and later he, Scholl, and another guest, Amber Conroy, began engaging in what Plaintiff describes as "sexual acts on each other." *Id.* ¶¶ 18, 21. Plaintiff maintains that Conroy "appeared to be enjoying herself, and at no point did she cry, raise her voice, express discomfort, say 'no,' or ask Plaintiff or Mr. Scholl to stop." *Id.* ¶ 23. Additionally, Plaintiff maintains that Conroy never attempted to leave the situation and texted Scholl the next day to say that she "had a good night." *Id.* ¶¶ 23–24.

After that night, Scholl and Conroy continued to date for around four months. *Id.* ¶ 25. According to Plaintiff, during that time, Conroy did not go to a hospital, made no reports to law enforcement, and did not accuse Scholl or Plaintiff of any wrongdoing. *Id.* Plaintiff alleges that as the relationship between Scholl and Conroy neared its end, "Conroy for the first time alluded to Mr. Scholl of the possibility of having both he and Plaintiff charged for the acts at the Super Bowl party if he did not continue to have a romantic relationship with her and pay her the $3,700 which Mr. Scholl owed her." *Id.* ¶ 26. Plaintiff further alleges, on information and belief, that when Scholl confronted Conroy in person "about the threats for actions that did not happen, she alluded to him that she would fabricate allegations against him and Plaintiff." *Id.*

2

According to Plaintiff, when Scholl ended the relationship and did not repay Conroy, Conroy for the first time approached the district attorney to file charges against Scholl and Plaintiff related to the events at the Super Bowl party. *Id.* ¶¶ 27–28. Plaintiff contends that Conroy contacted the Niagara Falls Police on or about May 30, 2021, and claimed she was the victim of a rape by John Scholl on or around February 7, 2021. *Id.* ¶ 29. Plaintiff was not initially mentioned in Conroy's complaints. *Id.* Plaintiff alleges that on or about June 7, 2021, Conroy first talked with Detective Mayes, the principal investigator on this matter, about the alleged sexual assault and only reported that she was raped by Scholl. *Id.* ¶¶ 30, 50.

Plaintiff alleges that Mayes then reported Conroy's complaint to District Attorney Seaman and Assistant District Attorney Wydysh so that "they could oversee and review the investigation to provide suggestions as well as be fully informed to decide when there was sufficient evidence to press criminal charges." *Id.* ¶ 31. He further alleges that Mayes, Seaman, and/or Wydysh reviewed "all the texts, calls, emails and/or other communications on Ms. Conroy's phone" during their investigation of the sexual assault claims and that these text messages demonstrated that Conroy's primary intent for bringing charges was in retaliation for Scholl ending the relationship. *Id.* ¶¶ 32, 34.

At some point, Conroy reported to police that Plaintiff had raped her, but as a result of the initial review of the text messages, no charges were brought against Plaintiff due to the lack of corroborating evidence. *Id.* ¶ 35. On September 8, 2021, Mayes called Plaintiff and asked him to give a recorded statement, which he did within an hour and a half of being contacted. *Id.* ¶ 36. At the end of statement, Plaintiff claims that Mayes indicated that she did not feel that Plaintiff was withholding anything from her and that she did not need to follow up with him. *Id*. Nevertheless,

on November 25, 2021, Mayes called Plaintiff to inform him that she had received additional evidence and that both Plaintiff and Scholl would be arrested for raping Conroy. *Id.* ¶ 37.

Plaintiff alleges that he was never informed what additional evidence was located and that no evidence was put forth at his trial to support Conroy's claim. *Id.* ¶ 38. Plaintiff alleges that the additional evidence was the supporting affidavit of Conroy's friend, Tonya Ramirez. *Id.* ¶ 39. Plaintiff maintains that Conroy's texts with Scholl conflicted with Ramirez's supporting affidavit and that none of the text messages between Scholl and Conroy and/or Ramirez make any reference to sexual assault for months until Conroy started threatening to press charges to compel Scholl to pay his debt and remain in the relationship. *Id.* ¶ 40. Plaintiff maintains that Mayes, Seaman, and Wydysh were fully aware of these texts, but continued to prosecute Plaintiff. *Id.* ¶ 41. Plaintiff further alleges that Mayes, Seaman, and Wydysh were aware that in her supporting affidavit Conroy claimed that she had been examined for sexual assault and that there was a rape kit, but that Mayes, Seaman, and Wydysh learned that this was false and were never able to locate a record of an examination. *Id.* ¶ 55.

On or about November 30, 2021, Plaintiff and Scholl were arraigned. *Id.* ¶ 45. Plaintiff alleges that Mayes, Seaman, and/or Wydysh informed media outlets and Plaintiff's employer of the charges. *Id.* ¶ 46. As a result, Plaintiff's arraignment made the national news, and his employer immediately placed him on leave. *Id.* ¶ 47. Thereafter, Plaintiff alleges that Mayes, Seaman, and/or Wydysh all investigated Conroy's allegations, but failed to interview other material witnesses and ignored exculpatory evidence. *Id.* ¶ 49. He further alleges that Mayes, Seaman, and/or Wydysh reviewed text communications between Conroy and Scholl that were produced by Scholl's attorney and eventually dropped the charges against Scholl due to a lack of substantiating evidence to support the charges. *Id.* ¶ 51. However, for months, Mayes, Seaman, and Wydysh did not turn

4

over this evidence to Plaintiff and the evidence was not submitted at trial. *Id.* ¶ 52. After the charges were dropped against Scholl, Plaintiff's criminal defense attorney scheduled a meeting with Seaman and Wydysh and offered to provide exculpatory evidence, but Seaman and Wysdysh said that they had no interest in reviewing any of the evidence. *Id.* ¶ 57. They also said that they fully intended to prosecute the case. *Id.* Plaintiff also alleges that Seaman and/or Wydysh informed Plaintiff's criminal defense counsel not to worry because everything will work out. *Id.* ¶ 61.

At Plaintiff's trial Seaman and/or Wydysh only produced Conroy and Mayes to testify and submitted no exhibits into evidence. *Id.* ¶ 63. During the trial, Plaintiff alleges that Conroy admitted that her initial complaint and supporting affidavit contained errors, that she never sought medical treatment for a rape kit, and that her story was inconsistent and kept changing. *Id.* ¶ 63. Additionally, during the trial, Mayes testified that she was aware of the allegedly exculpatory texts, that Plaintiff had been forthcoming in giving his statement, and that the only evidence she discovered for trial was that of Conroy. *Id.* Ultimately, Plaintiff's criminal trial only lasted one day, and the Judge dismissed all charges against Plaintiff by declaratory judgment due to a failure to produce sufficient evidence of guilt. *Id.* ¶ 62. Plaintiff alleges that the criminal trial was only a charade so that Mayes, Seaman, and/or Wydysh could save their reputations for informing the media of the charges. *Id.* ¶ 65.

On January 31, 2024, Plaintiff brought the instant action in this Court. ECF No. 1. On February 11, 2025, this Court issued a decision dismissing all of Plaintiff's claims but granting leave to amend as to certain claims. ECF No. 26. On March 12, 2025, Plaintiff filed an amended complaint. ECF No. 29. In the amended complaint, Plaintiff alleges five causes of action: (1) malicious prosecution in violation of 42 U.S.C. § 1983, (2) false arrest and false imprisonment in

violation of 42 U.S.C. § 1983, (3) malicious prosecution under state law, (4) defamation under state law, and (5) defamation *per se* under state law. *Id.*

## DISCUSSION

The Court discusses each pending motion below.

### I. Motions to Dismiss

The moving Defendants move to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6).[2] *See* ECF Nos. 30, 31.

### a. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that statement fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Rule 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

---

[2] Plaintiff argues that under Federal Rule of Civil Procedure 15, Defendants' motions are untimely. ECF No. 33-5 at 7. He then argues that because they are untimely, the motions should be denied and/or the Court should enter a default judgment against the moving Defendants. *See id.* However, because Plaintiff has not identified any prejudice as a result of the short delay, the Court *sua sponte* grants the moving Defendants a seven-day extension of time to respond to the amended complaint *nunc pro tunc* and therefore, the motions are timely.

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination regarding "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Under this plausibility standard, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "[W]ell-pleaded factual allegations" permit a court to "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Although Plaintiff's factual allegations set forth in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* at 678. If a plaintiff "ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may also review any "documents that plaintiff[ ] either possessed or knew about and upon which [he] relied in bringing the [action]." *Id.*

### b.  Claims Under 42 U.S.C. § 1983

Plaintiff alleges malicious prosecution, false arrest, and false imprisonment in violation of 42 U.S.C. § 1983. The moving Defendants move to dismiss. ECF Nos. 30, 31. While there are two separate motions, the Court will discuss them together, as they raise largely the same arguments.

### i. *City of Niagara Falls and Niagara County*

In his amended complaint, Plaintiff names the City and County as Defendants. ECF No. 29. In the Court's February 11, 2025 Decision and Order, the Court explained that a municipality can only be found liable under § 1983 where the municipality itself caused the constitutional violation at issue. ECF No. 26 at 6; *see Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978). Therefore, a municipality cannot be liable under § 1983 based on theories of *respondeat superior* or vicarious liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at 694–95). Because Plaintiff's only allegation was that the City and County should be held vicariously liable, the Court dismissed the claims with prejudice as to the City and County to the extent that they alleged liability under theories of *respondeat superior* or vicarious liability. ECF No. 26 at 9. In his amended complaint, Plaintiff raises no new theory of municipal lability. As such, Plaintiff's claims for malicious prosecution, false arrest, and false imprisonment in violation of 42 U.S.C. § 1983 are dismissed as to the City and County.

### ii. *Detective Alexandra Mayes*

Defendant Mayes argues that Plaintiffs claims against her under 42 U.S.C. § 1983 must be dismissed due to the existence of probable cause. ECF No. 30-4 at 6, 10. Alternatively, as to Plaintiff's malicious prosecution claim, Mayes argues that Plaintiff's claim must be dismissed because Plaintiff has failed to allege actual malice on behalf of Mayes. ECF No. 35 at 9. Finally, Mayes argues that she is entitled to qualified immunity as to each claim under 42 U.S.C. § 1983. ECF No. 30-4 at 12. The Court discusses each argument below.

#### 1. <u>False Arrest/False Imprisonment Claims</u>

Mayes raises only one argument as to Plaintiff's claims for false arrest and false imprisonment—that there was probable cause to arrest Plaintiff. ECF No. 30-4 at 10. Where the

arresting officer has probable cause to make an arrest, there can be no federal civil rights claim for false arrest or false imprisonment. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). "In general, probable cause to arrest exists when the officers have knowledge . . . of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Courts must determine "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).  "An arresting officer advised of a crime by a person who claims to be the victim . . . has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Miller v. City of New York*, 700 F. App'x 57, 58 (2d Cir. 2017) (summary order). "The most common situation in which such doubts arise is when there exists a prior [bitter] relationship between the victim and the accused that gives rise to a motive for a false accusation." *Powar v. City of New York*, No. 14-CV-4053, 2016 WL 8711092, at *8 (E.D.N.Y. Sept. 30, 2016). Where there are circumstances which give rise to doubts as to the victim's veracity, the "failure to make a further inquiry when a reasonable person would have done so may be evidence of [a] lack of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation omitted).

Mayes cites numerous text messages that could demonstrate probable cause, and she argues that these messages combined with Conroy's statement that Plaintiff had raped her were sufficient to establish probable cause to arrest Plaintiff.[3] ECF No. 30 at 10–12. However, at the motion to

---

[3] The text messages at issue were referenced by Plaintiff in his amended complaint. *See* ECF No. 29. Therefore, they may be considered as "documents that plaintiff[ ] either possessed or knew about and upon which [he] relied in bringing the [action]." *Rothman*, 220 F.3d at 88.

dismiss stage, the Court must accept Plaintiff's allegations as true, and Plaintiff has alleged that there were circumstances prior to his arrest that called Conroy's veracity into question. Specifically, he alleges that Mayes reviewed text messages that contained (1) Conroy's message to Scholl saying she had a good night at the Super Bowl party, ECF No. 29 ¶ 24; (2) evidence that Conroy's primary intent for bringing the charges was in retaliation for Scholl ending their relationship, *id.* ¶ 34; and (3) evidence that she threatened to bring charges if her demands were not met, *id.* ¶ 26. Plaintiff also alleges that the supporting affidavit submitted by Conroy's friend Tonya Ramirez conflicted with Conroy's texts to Scholl and that Mayes was aware of that prior to Plaintiff's arrest. *Id.* ¶ 40. Based on these allegations, the Court concludes that Plaintiff has sufficiently alleged circumstances that give rise to doubts as to Conroy's veracity and which would have led a reasonable person to make a further inquiry. *See Manganiello*, 612 F.3d at 161. As such, the Court concludes that the text messages cited by Mayes and Conroy's statement do not conclusively establish probable cause and that dismissal is not warranted on this basis.

### 2. <u>Malicious Prosecution</u>

To prevail on a malicious prosecution claim brought under Section 1983, a plaintiff must establish: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, [ ](4) actual malice," and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (quotation omitted). Mayes argues that this claim must be dismissed because there was probable cause to arrest Plaintiff and because Plaintiff has failed to allege actual malice. ECF No. 35 at 8–9.

10

As for Mayes's probable cause argument, she raises essentially the same argument as she did regarding the false arrest and false imprisonment claims. "The probable cause standard relevant to a malicious prosecution claim is different from, but related to, the probable cause standard relevant to a false arrest claim." *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024). In a malicious prosecution action, probable cause means "probable cause to believe that [the prosecution] could succeed." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). If the "facts and circumstances . . . would lead a reasonably prudent person to believe the plaintiff guilty," then sufficient probable cause exists. *Frost v. N.Y.C. Police Dep't,* 980 F.3d 231, 243 (2d Cir. 2020) (quotation omitted). Despite the distinction between probable cause to arrest and probable cause to prosecute, where "probable cause to arrest exist[s] . . . [and there are no] intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive." *Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014) (summary order). In addition to intervening facts or newly discovered evidence, an officer's "failure to make further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). "For example, an officer's failure to examine evidence already available to him may lead probable cause that existed at arrest to dissipate prior to the commencement of the prosecution." *Caraballo*, 726 F. Supp. 3d at 160.

Mayes again argues that the text messages referenced in Plaintiff's complaint and Conroy's statement are sufficient to establish probable cause to arrest Plaintiff and commence criminal proceedings against Plaintiff. ECF No. 30-4 at 6–10. However, for the same reasons as discussed above, the Court concludes that Plaintiff has sufficiently alleged circumstances that give rise to doubts as to Conroy's veracity and which would have led a reasonable person to make a further inquiry. *See Lowth*, 82 F.3d at 571. Therefore, the Court rejects Mayes's argument that the cited

text messages and Conroy's statement conclusively established probable cause to initiate and continue to prosecute Plaintiff.

As for Mayes's argument related to actual malice, "malice does not have to be actual spite or hatred[ ] but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (quotation omitted). A plaintiff need not demonstrate the defendant's intent to do him personal harm, he "need only show a reckless or grossly negligent disregard for his or her rights." *Charlotten v. Heid*, No. 09-CV-0891, 2011 WL 3423826, at *7 (N.D.N.Y. Aug. 4, 2011) (quotation omitted). Thus, "[i]n most cases, the lack of probable cause—while not dispositive— tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Lowth*, 82 F.3d at 573 (quotation omitted).

Mayes argues that Plaintiff has not alleged actual malice as to her because there is no allegation of a basis for a wrong or improper motive. However, as discussed above, malice may be inferred from the lack of probable cause. *See Lowth*, 82 F.3d at 573. Here, Mayes has failed to present an argument that Plaintiff has not plausibly alleged the lack of probable cause. Because she has failed to do so and malice can be inferred from a lack of probable cause, the Court concludes that dismissal is not warranted on the basis that Plaintiff has failed to adequately plead actual malice.

### 3. <u>Qualified Immunity</u>

Alternatively, Mayes argues that she is entitled to qualified immunity as to each claim under 42 U.S.C. § 1983. ECF No. 30-4 at 12. The Court rejects this argument. The doctrine of qualified immunity shields government officials from civil damages liability unless "the official violated a statutory or constitutional right that was clearly established at the time of the challenged

conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, Mayes argues that she is entitled to qualified immunity because "it was reasonable for her to believe" that she did not violate Plaintiff's rights due to Conroy's allegations against Plaintiff and the text messages retrieved from Scholl's phone. ECF No. 30-4 at 13. Because this argument fails to address whether the facts of the instant case make out a violation of a constitutional right or whether the right at issue was clearly established at the time of the alleged misconduct, the Court concludes that Mayes is not entitled to qualified immunity on this basis.

### iii.   District Attorney Brian D. Seaman and Assistant District Attorney Peter Wydysh

Defendants Seaman and Wydysh argue that the claims against them under 42 U.S.C. § 1983 must be dismissed because they are entitled to absolute prosecutorial immunity as to every allegation against them in the complaint. ECF No. 31-1 at 7. They also argue that to the extent Plaintiff argues that Seaman and Wydysh are not entitled to absolute immunity because they were acting in an investigative capacity, Plaintiff's allegations are insufficient to state a claim. *See* ECF No. 34 at 7.

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694

F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Id.* (quotation omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quotation omitted). Whether an activity is protected by absolute immunity depends upon the function the prosecutor was performing. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).

On a motion to dismiss a claim against a prosecutor based on absolute immunity, the plaintiff's allegations are taken as true. *Kalina*, 522 U.S. at 122. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted). Therefore, if a prosecutor can establish that he was functioning as an advocate when he engaged in the challenged conduct, then he is entitled to absolute immunity. *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996). On the other hand, if the prosecutors' alleged wrongdoing took place in the course of "administration or investigation not undertaken in preparation for judicial proceedings[,]" then he is not entitled to absolute immunity. *Hill*, 45 F.3d at 661.

Here, Plaintiff maintains that Seaman and Wydysh are not entitled to absolute immunity because the alleged wrongdoing took place when they were acting in an investigatory capacity. ECF No. 33-5 at 19. The Court disagrees. Almost all of the allegations against Seaman and Wydysh relate to their (1) decision to bring charges against Plaintiff; (2) decision to continue to press charges despite the lack of evidence substantiating Conroy's claims and the existence of allegedly exculpatory evidence; (3) failure to interview other witnesses; and (4) motivations in continuing

14

to prosecute Plaintiff. *See* ECF No. 29 ¶¶ 32–70. As to these allegations, Seaman and Wydysh are entitled to absolute immunity. *Ogunkoya v. Monaghan*, 913 F.3d 64, 71 (2d Cir. 2019) ("The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function."); *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is also entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'"); *Bernard v. County of Suffolk*, 356 F.3d 495, 504–05 (2d Cir. 2004) (holding that prosecutors are entitled to absolute immunity as to charging decision regardless of whether they had an improper motive for bringing the charges); *Woolfolk v. Thomas,* 725 F. Supp. 1281, 1283 (N.D.N.Y. 1989) (holding that prosecutors are entitled to absolute immunity for their decisions not to investigate).

Plaintiff only makes two allegations as to Seaman and Wydysh that arguably would not be covered by absolute immunity. The first is that "[u]pon information and belief, Detective Mayes then reported Ms. Conroy's complaint to District Attorney Seaman and/or Assistant District Attorney Wydysh so that they could oversee and review the investigation to provide suggestions as well as be fully informed to decide when there was sufficient evidence to press criminal charges." ECF No. 29 ¶ 31. The second is that "District Attorney Seaman and/or Assistant District Attorney Wydysh informed media outlets of the charges, along with informing Mr. Lasher's employer." *Id.* ¶ 46. These allegations alone are insufficient to plead a claim for malicious prosecution, false arrest, or false imprisonment pursuant to 42 U.S.C. § 1983. Therefore, these claims are dismissed.

### c.  State Law Claim for Malicious Prosecution, Defamation, and Defamation *Per Se*

In its February 11, 2025 Decision and Order, the Court dismissed Plaintiff's claims for malicious prosecution, defamation, and defamation *per se* under state law as untimely. ECF No. 26 at 10–12. In that decision, the Court explained that under New York General Municipal Law § 50-i, Plaintiff's state law claims were untimely by one day. *Id.* Nevertheless, the Court granted Plaintiff leave to replead those claims so long as he provided either a basis for equitable tolling of the statute of limitations or an argument that these claims are timely. *Id.* Plaintiff has provided no argument as to why these claims are timely or a basis for equitable tolling. Consequently, these claims are dismissed.

### d.  Leave to Amend Denied

"Although Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely given when justice so requires, it is within the sound discretion of the district court whether to grant or deny leave to amend." *Schvimmer v. Off. of Ct. Admin.*, 857 F. App'x 668, 671 (2d Cir. 2021) (summary order) (cleaned up). Therefore, the Court may deny leave to amend if it determines amendment would be futile or there has been a "repeated failure to cure deficiencies by amendments previously allowed." *United States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 28 (2d Cir. 2016). In this case, the Court concludes that Plaintiff should not be granted leave to amend because Plaintiff has not requested leave to further amend and because he has failed to correct deficiencies in the complaint that were already brought to his attention in defendants' original motions to dismiss. *See Exelis*, 824 F.3d at 28–29. Therefore, Plaintiff's claims, which have been dismissed for the reasons discussed above, are dismissed with prejudice.

## II.    Motion for Default Judgment

Plaintiff has moved for a default judgment against Conroy pursuant to Rule 55(b)(2). ECF No. 33-5 at 21. The Court discusses this motion below.

### a.    Legal Standard

Federal Rule of Civil Procedure 55 addresses defaults and default judgments. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not [a minor] or incompetent person." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal citation omitted). "In all other cases, Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *Id.* (internal citation and quotation marks omitted).

### b.    Plaintiff's Motion

Plaintiff moves for default judgment against Conroy pursuant to Rule 55(b)(2). ECF No. 33-5 at 21. Plaintiff has obtained an entry of default from the Clerk of Court. ECF No. 28. However, even when the Clerk of the Court has entered a default, that "does not mean that default judgment is automatically warranted." *Farrington v. Fingerlakes1.com, Inc.*, No. 19-CV-6802, 2020 WL 7350336, at *2 (W.D.N.Y. Dec. 15, 2020) (citing *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015)). In deciding whether to enter a default judgment, courts first address whether "liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers*, 779 F.3d at 187.

17

Here, the Court cannot conclude that Plaintiff has established liability as a matter of law. First, as to the claims under 42 U.S.C. § 1983, to state a valid claim "the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Generally, private actors are not state actors subject to Section 1983 unless the private actor "conspire[s] with a state official to violate an individual's federal rights." *Anilao v. Spota*, 340 F. Supp. 3d 224, 253 (E.D.N.Y. 2018). It is unclear from Plaintiff's complaint whether he is asserting claims under 42 U.S.C. § 1983 against Conroy, but assuming that he is, these claims fail because the complaint contains no allegations that Conroy conspired with a state actor and therefore, there are no allegations that she was acting under color of state law. *See id.* (holding that a private actor can be found to act under color of state law if the party is a willful participant in joint action with a state actor and that the touchstone of such joint action is a "plan, prearrangement, conspiracy, custom, or policy shared" by the private and state actors) (internal quotation omitted). Because state action is an essential element of any claim under 42 U.S.C. § 1983, and Plaintiff has failed to plead state action as to Conroy, the Court cannot grant Plaintiff's motion for default judgment as to Conroy on those claims.

Second, as to the state law claims for malicious prosecution, defamation, and defamation *per se*, Plaintiff has failed to establish liability as a matter of law because the claims are untimely. As explained in this Court's February 11, 2025 Decision, under New York Civil Practice Law and Rules § 215 ("C.P.L.R. § 215"), claims for malicious prosecution, defamation, and defamation *per se* are subject to a one-year statute of limitations. ECF No. 26 at 10. While under New York General Municipal Law § 50-i, that period is extended to one year and ninety days when a Plaintiff sues a

18

municipality or an individual a municipality must indemnify, Conroy does not fall into either of those categories. *See id.* Therefore, C.P.L.R. § 215's one-year statute of limitations applies to Plaintiff's state law claims against Conroy.

For a malicious prosecution claim, the statute of limitations begins to run when the criminal proceeding is favorably terminated. *See Roman v. Comp USA, Inc.*, 38 A.D.3d 751, 752 (2d Dep't 2007). In this case, Plaintiff claims that the judge presiding over his criminal trial dismissed all charges against him by a declaratory judgment on November 1, 2022. ECF No. 33-4 at 5. Thus, the statute of limitations for his malicious prosecution claim against Conroy expired on November 1, 2023. Because Plaintiff did not bring this action until January 31, 2024, his claim for state law malicious prosecution as to Conroy is untimely.

When asserting a defamation claim, the clock begins to run for the purposes of the statute of limitations from the date that the alleged statement was made or published. *See Karam v. First Am. Bank of N.Y.*, 190 A.D.2d 1017, 1018 (4th Dep't 1993); *Nussenzweig v. diCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007). In this case, Plaintiff alleges that Conroy presented a fabricated version of events to the District Attorney and that these statements were leaked to the press. ECF No. 29 ¶¶ 100–01, 106–07. Plaintiff alleges that these statements were made and leaked prior to Plaintiff's acquittal, which Plaintiff maintains occurred on November 1, 2022. *See id.* ¶¶ 100–10. As explained above, even if these statements were made or published on November 1, 2022—the day Plaintiff alleges all charges against him were dismissed—Plaintiff's defamation claims would still be untimely because this action was brought on January 31, 2024—more than one year after the statements were made and/or published. Consequently, the Court cannot grant Plaintiff's motion for default judgment as to Conroy on his malicious prosecution, defamation, and defamation *per se* claims because they are untimely.

19

### c.  Leave to Amend Denied

The decision to grant leave to amend is within the discretion of the court, and "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Here, granting leave to amend as to Conroy would be futile because there is no indication in the complaint that Conroy was acting under color of state law and because Plaintiff's state law claims are time barred. Further, Plaintiff has already been given an opportunity to correct deficiencies in his complaint and has failed to do so. *See Exelis*, 824 F.3d at 28–29. Therefore, Plaintiff's claims against Amber Conroy are dismissed with prejudice.

## III.    Motion for Discovery

Plaintiff has also moved for discovery, arguing that his claims should not be dismissed until he has had a chance to determine the merits of his claims and the scope of Defendants' immunity. ECF No. 33-5 at 20–21. However, "[a]s a general proposition, a litigant has to state a claim before he or she is entitled to discovery." *Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010). This is because "allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to streamline litigation by dispensing with needless discovery and factfinding where the plaintiff has failed to state a claim under the law." *Id.* (quotation omitted). Therefore, discovery is unwarranted where it would function as a "fishing expedition for evidence in search of a theory that has yet to be asserted." *Id.* (quotation omitted). Consequently, there is no merit to Plaintiff's argument that his claims should not be dismissed prior to discovery, and Plaintiff's motion is denied.

## CONCLUSION

For the reasons stated above, the motion to dismiss on behalf of the City and Mayes (ECF No. 30) is GRANTED IN PART AND DENIED IN PART. All claims against the City of Niagara Falls are DISMISSED WITH PREJUDICE, and Plaintiff's claims against Mayes for malicious prosecution, defamation, and defamation *per se* under state law are DISMISSED WITH PREJUDICE. As to Plaintiff's remaining claims under 42 U.S.C. § 1983, Mayes shall answer or otherwise respond to Plaintiff's amended complaint by December 8, 2025.

The motion to dismiss on behalf of the County, Seaman, and Wydysh (ECF No. 31) is GRANTED, and all claims against the County, Seaman, and Wydysh are DISMISSED WITH PREJUDICE.

Plaintiff's cross-motions for default judgment and discovery (ECF No. 33) are DENIED, and Plaintiff's claims against Conroy are DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to terminate Amber Conroy, the City of Niagara Falls, Niagara County, District Attorney Brian D. Seaman, and Assistant District Attorney Peter Wydysh as Defendants in this action.

IT IS SO ORDERED.

Dated: November 7, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

21